United States Court of Appeals,

Fifth Circuit.

No. 94-30070

Summary Calendar.

Charles E. HILLIARD, Plaintiff-Appellant,

v.

Barbara FERGUSON, Superintendent of the Orleans Parish School System, and Orleans Parish School Board, Defendants-Appellees.

Sept. 8, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM, KING, and GARWOOD, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiff in this case, Charles E. Hilliard, brought a civil rights action against Barbara Ferguson, Superintendent of the Orleans Parish School Board, and the Orleans Parish School Board pursuant to 42 U.S.C. §§ 1983 and 1985(3). The district court entered summary judgment for the defendants. We affirm that decree.

I.

In early 1992, Hilliard applied for a job with Project Independence, which was part of the Adult Education Program of the Orleans Parish School System. He contends that James Raby, a coordinator at Project Independence, told him that his application would be denied because Board policy precluded consideration of

1

applicants with prior felony convictions.[1]  Hilliard acknowledges, however, that Raby also told him that, irrespective of his prior conviction, no available positions existed with the Adult Education Program.  Raby recommended that Hilliard apply directly to the Orleans Parish School Board.

Hilliard took that advice and submitted his application to the Board.  In response, the Board sent him a brochure outlining Board policies.  The pamphlet, "Application Procedures for a Teaching Position with the New Orleans Public Schools" stated that "Felony convictions will automatically eliminate an applicant from consideration."  Later, the Board informed Hilliard that it hired only certified applicants (Hilliard still needed to pass the National Teacher's Exam).

While updating his application, Hilliard wrote to the Board's personnel director.  In his letter, Hilliard stated his belief that the Board's automatic elimination of convicted felons from the application process violated federal law.  The personnel director informed Hilliard that his accusation was premature because no decision had yet been reached on Hilliard's application.  Moreover, the letter informed Hilliard that he would nonetheless be interviewed and should, at that time, explain the details of his conviction.  After the interview, a decision as to Hilliard's suitability would be reached.[2]

---

[1]Hilliard had spent just shy of ten years in federal prison for armed robbery.

[2]Even if he were found to be a suitable candidate, other obstacles still stood in Hilliard's way.  The Board informed him,

2

Hilliard filed suit in federal court alleging that Ferguson and the Board violated his fourth and fourteenth amendment rights by denying him employment on the basis of his status as a convicted felon. He also alleged that the Board's policy on this matter constituted a conspiracy to deprive members of his class (convicted felons) of their rights to equal protection.

The defendants moved for summary judgment on both claims. As to the former, the defendants argued that Board policy does not exclude all felons from employment. The Board contends (and Hilliard admitted) that the statement in the pamphlet that all convicted felons are automatically eliminated was made in error. Instead, the Board's actual and long-standing policy requires the superintendent to review the facts and circumstances of each applicant's felony conviction. Then, an individualized determination as to the suitability of the candidate is made. Factors considered include the crime, the position sought, and evidence of rehabilitation.

On Hilliard's second claim, the defendants argued that they were entitled to summary judgment because a corporation cannot conspire with its own agents or employees. In this case, they contend, the alleged conspiracy involved Ferguson, an employee or agent of the board, and the Board itself. These are all factions of the same legal entity: The School Board. The district court

---

for example, that any vacancies would first be filled by surplus teachers and then by fully certified teachers.

granted the defendants' motion as to both claims.

                              III.

We review the district court's grant of summary judgment *de novo.* We look to see first, whether a disputed issue of material fact exists and, second, whether the moving party is entitled to judgment as a matter of law.[3] In this case, to defeat the Board's motion for summary judgment, Hilliard must have set forth specific facts showing the existence of a genuine issue for trial.[4] In our examination, we view the evidence in a light most favorable to Hilliard, the non-moving party.[5]

                              IV.

Section 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." Moreover, section 1983 provides a cause of action against local governmental units when the allegedly improper action was taken pursuant to municipal policy or custom.[6]

Hilliard's § 1983 claim that the Board policy excluding from consideration any convicted felon violates his fourth and fourteen amendment rights is contradicted by his own testimony. He

---

[3]Fed.R.Civ.P. 56(c).

[4]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514-15, 91 L.Ed.2d 202 (1986).

[5]*Salas v. Carpenter,* 980 F.2d 299, 304 (5th Cir.1992).

[6]*Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978).

testified at his deposition that Raby never told him that his felony conviction automatically disqualified him for a position. In fact, Hilliard acknowledged at his deposition that the actual Board policy requires a case-by-case examination into the circumstances of each felon's conviction.[7] In other words, subject to special clearance from the Orleans Parish Department of Personnel, a convicted felon may be eligible for employment. This admission precludes a finding of any disputed issue of fact as to the Board's official policy.

Having ascertained the Board's actual policy, we must determine whether it runs afoul of the applicable legal standard. It does not. Because the "right to hold public employment is not a recognized fundamental right,"[8] and convicted felons are not a constitutionally protected suspect class,[9] no heightened level of

---

[7]Hilliard admitted that the official Board policy regarding the employment of convicted felons provides, in part:

> An applicant must be of good character. If he/she has any prior record of arrest or conviction by any local, state, or federal law enforcement agency for an offense other than a minor traffic violation, the facts must be reviewed by the Superintendent and his/her staff who shall decide whether the applicant shall be declared eligible for appointment.

Basic Employment Requirements of the Orleans Parish School Board, adopted Aug. 4, 1969, revised, Nov. 26, 1973 and March 22, 1976.

[8]*Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2566-67, 49 L.Ed.2d 520 (1976); *Arceneaux v. Treen,* 671 F.2d 128, 133 (5th Cir.1982).

[9]*Baer v. City of Wauwatosa,* 716 F.2d 1117, 1125 (7th Cir.1983); *Upshaw v. McNamara,* 435 F.2d 1188, 1190 (1st Cir.1970).

5

scrutiny applies. Instead, we apply the rational basis test. We examine the Board's policy to determine whether it bears "a rational relationship to a legitimate end".[10]

The Board's policy easily satisfies that minimal threshold. Looking a little deeper into a convicted felon's background and, in particular, at the circumstances of the conviction is rationally related to serve the legitimate interest in protecting the schoolchildren within that teacher's proximity and care.[11] We would expect nothing less. The policy serves to ensure that the highest degree possible of educational services will be provided to the children of Orleans Parish within a safe and secure environment.

V.

Hilliard also alleges a conspiracy between Ferguson and the Board to deprive him of his civil rights. To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a

---

[10]*United States v. Galloway,* 951 F.2d 64, 66 (5th Cir.1992).

[11]Our holding is in keeping with other courts that have examined this issue in other contexts. *See, e.g., Upshaw,* 435 F.2d at 1190-91 (convicted felon subsequently granted a full pardon by the state of Massachusetts sought appointment to the Boston Police Department after scoring well on his civil service examination; court upheld denial of his application on the basis of his criminal record); *McGarvey v. District of Columbia,* 468 F.Supp. 687, 689-90 (D.D.C.1979) (upholding examination mandated by D.C.Code into the circumstances of a felony conviction prior to public employment).

deprivation of any right or privilege of a citizen of the United States.[12]  In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus.[13]

The district court concluded that Hilliard had failed to show that the conspiracy involved two or more persons.  That conclusion is sound.

It is a long-standing rule in this circuit that a "corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."[14]  In this case, we apply that rule to the School Board.

In *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*[15], the U.S. Court of Appeals for the Sixth Circuit did exactly that.  In *Hull,* the court applied our holding in *Nelson* to a § 1985(3) claim alleging a similar conspiracy involving the Cuyahoga School Board.  The plaintiff in *Hull* alleged that the Cuyahoga School Superintendent conspired with the executive director of the district and a school administrator.  All were employees of the

---

[12]*Deubert v. Gulf Fed. Sav. Bank,* 820 F.2d 754, 757 (5th Cir.1987) (citing *United Brotherhood of Carpenters and Joinders of America, Local 610 v. Scott,* 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3355-57, 77 L.Ed.2d 1049 (1983)).

[13]*Burns-Toole v. Byrne,* 11 F.3d 1270, 1276 (5th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994).

[14]*Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir.1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).

[15]926 F.2d 505 (6th Cir.), *cert. denied,* --- U.S. ----, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991).

School Board.  The court held that, as all were members of the same collective entity, the conspiracy did not involve two or more people.[16]  Three district court cases in this Circuit have reached the same conclusion.[17]  We do so as well.

We do not overlook the ways in which a school board is unique and distinct from a corporation.  A corporation maintains a unified face in the eyes of the law.  It is in that vein that we say that a corporation is a person.  A school board, however, is a collection of individuals, some fill elected positions, some are salaried workers.  Still, that distinction is not dispositive. All are employees of the school board.  We follow the reasoning of the other courts on this question and hold that a school board and its employees constitute a single legal entity which is incapable of conspiring with itself for the purposes of § 1985(3).

## VI.

We are convinced that Hilliard did not receive an offer of employment because no positions for which he was qualified and certified were available.  The plaintiff is resting on "mere

---

[16]*Id.* at 509-10.

[17]*See Moody v. Jefferson Parish School Board,* 803 F.Supp. 1158, 1166 (E.D.La.1992) (School Board, Principal, Vice-Principal, and various teachers are all employed by the Jefferson Parish School Board and, thus, are a single entity), *aff'd* 2 F.3d 604 (5th Cir.1993); *Hankins v. Dallas Indep. Sch. Dist.,* 698 F.Supp. 1323, 1330 (N.D.Tex.1988) (high school and its officials constitute a single entity); *Chambliss v. Foote,* 421 F.Supp. 12, 15 (E.D.La.1976) ("the university and its officials are considered as constituting a single legal entity which cannot conspire with itself"), *aff'd,* 562 F.2d 1015 (5th Cir.1977), *cert. denied,* 439 U.S. 839, 99 S.Ct. 127, 58 L.Ed.2d 137 (1978).

allegations or denials"[18] in his effort to show that something more serious or sinister was involved.  This he may not do.  Judgment for the defendants was proper.

AFFIRMED.

---

[18]*Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514.