**Trev CLARK, Plaintiff,**

v.

**LA MARQUE I.S.D., Russel E. Washington, Jr., individually and in his capacity as Chief of Police for La Marque I.S.D., and Ben Cavil, individually and in his official capacity as Assistant Superintendent of Administration for La Marque I.S.D., Defendants.**

No. Civ.A. G–99–668.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 4, 2002.

George M. Kirk, Jr., Houston, TX, for plaintiff.

Tom M. Davis, Jr., Matthew C. Guilfoyle, Davis Oretsky, Houston, TX, Catherine Hale Herrington, Daw & Ray, Houston, TX, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Trev Clark ("Clark") brings this malicious prosecution and civil conspiracy lawsuit against Defendants La Marque Independent School District ("LMISD"), Russel E. Washington, Jr. ("Washington"), individually and in his official capacity as Chief of Police for LMISD, and Ben Cavil ("Cavil"), individually and in his official capacity as Assistant Superintendent of Administration for LMISD, pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 and Texas state law. Now before the Court is Defendants' Motion for Summary Judgment on grounds that Clark's claims against them are wholly without merit. For the reasons articulated below, Defendants' Motion for Summary Judgment is hereby **GRANTED**.

### I.

Clark, a former LMISD history teacher and football coach, originally filed this lawsuit against Defendants in the 122nd Judicial District Court of Galveston, Texas on September 9, 1999. In his Original Petition, Clark alleges that he was falsely accused by Amy Castillo ("Castillo"), a female student, and Defendants of having an improper relationship with Castillo during the 1995–96 school year. Clark further alleges that Defendants proceeded to pursue his criminal indictment and felony prosecution for sexual assault of a minor, all the while ignoring "voluminous exculpatory evidence" that established Clark's innocence. Finally, Clark alleges that Washington and Cavil withheld exclupatory evidence during his criminal trial and initiated school district termination proceedings against Clark in an effort to bolster the criminal charges levied against him. Defendants subsequently removed the lawsuit to this Court on October 29, 1999.

### II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for

trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691 (S.D.Tex. 1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### III.

■ Section 1981 provides that all persons in the United States shall have the same contractual rights as white citizens. *See* 42 U.S.C. § 1981. Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII. *See LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 n. 2 (5th Cir.1996). This evidentiary framework, established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973), requires the plaintiff to prove a prima facie case of discrimination by a preponderance of the evidence. *See id.* at 802, 93 S.Ct. at 1824. In order to establish a prima facie case, the plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) his employer sought to replace him with a similarly qualified white employee. *See Pratt v. City of Houston,* 247 F.3d 601, 606 (5th Cir.2001).

■ Clark's argument that the conduct upon which his malicious prosecution claim is based may also give rise to a violation of 42 U.S.C. § 1981 necessarily fails because he has not established a prima facie case of discrimination.[1] Most notably, Clark makes no allegation that any of the challenged conduct was motivated by racial considerations. Furthermore, Clark fails to provide any evidence indicating that LMISD sought to replace him with a similarly qualified white employee after his termination. Accordingly, Defendants' Motion for Summary Judgment is hereby **GRANTED** with respect to Clark's claims brought pursuant to 42 U.S.C. § 1981.

### IV.

■ To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving him directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson,* 30 F.3d 649,

---

1. Clark's Original Petition and Response to Defendants' Motion for Summary Judgment both refer to "42 U.S.C. § 1881 (the Civil Rights Act of 1991 as amended)." The Court assumes that Clark actually alleges a violation of 42 U.S.C. § 1981, not 42 U.S.C. § 1881. Section 1881 pertains to the National Medal of Science, not Civil Rights.

652–53 (5th Cir.1994) (citing *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir.1987)); *see also United Bhd. of Carpenters and Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1994). In doing so, the plaintiff must also show that the conspiracy was motivated by a class-based animus. *Hilliard*, 30 F.3d at 653 (citing *Burns–Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.), *cert. denied*, 512 U.S. 1207, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994)).

■ Clark alleges that Washington, Cavil and LMISD conspired to deprive him of his civil rights in violation of § 1985. Clark's conspiracy claim fails, however, because a school and its officials constitute a single legal entity which cannot conspire with itself. *See Hilliard*, 30 F.3d at 653 (applying the long-standing rule that a "corporation cannot conspire with itself" in the context of a school board); *Hankins v. Dallas Indep. Sch. Dist.*, 698 F.Supp. 1323, 1330 (N.D.Tex.1988) (high school and its officials constitute a single entity incapable of conspiring with itself); *Zentgraf v. Texas A & M Univ.*, 492 F.Supp. 265, 272–273 (D.C.Tex.1980) ("the University and its officials constitute a single legal entity which cannot conspire with itself in violation of § 1985"). Clark only alleges actions by school officials in connection with school affairs. Accordingly, the Court concludes that, as a matter of law, no conspiracy among the Defendants could have existed.[2] Thus, Defendants' Motion for Summary Judgment is hereby **GRANTED** with respect to Clark's claims brought pursuant to 42 U.S.C. § 1985.

**V.**

Section 1983 provides a cause of action against "[e]very person who, under color of any statute … of any State … subjects, or causes to be subjected, any citizen … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…." 42 U.S.C. § 1983; *see also Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000) (citing *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994)).

### § 1983 Claim Against LMISD

■ Clark's attempt to establish a valid § 1983 cause of action against LMISD fails as a matter of law. Section 1983 only provides a cause of action against local governmental units when the allegedly improper action was taken pursuant to an official policy or governmental custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). However, Clark makes absolutely no reference to any LMISD policy or custom in his Original Petition or in his Response to Defendants' Motion for Summary Judgment. Moreover, the Supreme Court's *Monell* decision clearly bars governmental liability under § 1983 when the liability is premised upon a theory of *respondeat superior*. 436 U.S. at 694, 98 S.Ct. at 2037; *see also Leffall*, 28 F.3d at 525; *Voorhies v. Conroe Indep. Sch. Dist.*, 610 F.Supp. 868, 870 (S.D.Tex.1985). Given that Clark bases his claims against LMISD solely on the conduct of Washington and Cavil, Defendants' Motion for Summary Judgment is hereby **GRANTED** with respect to the § 1983 claim against Defendant LMISD.

---

**2.** Furthermore, Clark does not make any assertions *at all* suggesting that the alleged conspiracy was motivated by a class-based animus. Thus, even if the Court were to find that the Defendants could have conspired with one another, Clark's allegations would still be insufficient to establish a § 1985 cause of action.

### Official Capacity Claims Against Washington and Cavil

█ It is well settled that a judgment against a public servant "in his official capacity" imposes liability on the entity that he represents. *See Monell*, 436 U.S. at 691 n. 55, 98 S.Ct. at 2036 n. 55 (indicating that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Turner v. Houma Mun. Fire and Police Civil Serv.*, 229 F.3d 478, 483 (5th Cir.2000); *Welch v. Laney*, 57 F.3d 1004, 1007 (11th Cir.1995); *Shuford v. Alabama State Bd. of Educ.*, 968 F.Supp. 1486, 1515 (M.D.Ala.1997). The Supreme Court discussed this proposition in *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), stating that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Consequently, Clark's § 1983 claims against Washington in his official capacity as Chief of Police for LMISD and Cavil in his official capacity as Assistant Superintendent of Administration for LMISD are simply a reformulation of his claims against LMISD. Given that Clark has named LMISD as a defendant in this action, his claims for § 1983 relief as to Washington and Cavil are redundant. *See Wallace v. City of Montgomery*, 956 F.Supp. 965, 976 (M.D.Ala.1996). Therefore, Defendants' Motion for Summary Judgment is hereby **GRANTED** with respect to the official capacity claims brought against Defendants Washington and Cavil.

### Individual Capacity Claims Against Washington and Cavil

█ In response to the § 1983 claim brought against them in their individual capacities, Defendants Washington and Cavil assert the defense of qualified immunity. The Supreme Court explained the standard for qualified immunity in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982): "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thus, before proceeding against a defendant claiming qualified immunity, the Court must determine whether (1) the plaintiff alleges a Constitutional violation; (2) the law regarding the alleged violation was clearly established at the time of the operative events; and (3) the evidence shows that the violation occurred, or at least gives rise to a genuine issue of material fact as to whether the defendants actually engaged in conduct that violated clearly established law. *See Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir.1999) (citing *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988)). After considering these initial factors, the Court may ask whether the defendants acted within the scope of their authority and with the degree of reasonableness expected of a government official under the relevant circumstances. *See Kerr*, 171 F.3d at 339.

█ Clark argues that his malicious prosecution claim implicates two of his constitutional rights—his Fourteenth Amendment right to substantive due process and his Fourth Amendment Right to be free from unreasonable search and seizure. Clark's Fourteenth Amendment claim is barred by the Supreme Court's holding in *Albright v. Oliver*, 510 U.S. 266, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In that case, Albright's § 1983 claim concerned the malicious initiation of a baseless criminal prosecution against him. *See Albright*, 510 U.S. at 267, 114 S.Ct. at 809. Albright argued that Oliver had deprived him of substantive due process under the Fourteenth Amendment—his "liberty in-

terest"—to be free from criminal prosecution except under probable cause. *See id.* When faced with Albright's claim, the Supreme Court reasoned that his claimed interest was markedly differed from the interests traditionally afforded protection by substantive due process, i.e. matters relating to marriage, family, procreation and the right to bodily integrity, *see id.* at 272, 114 S.Ct. at 812, and ultimately concluded that substantive due process, with its "scarce and open-ended guideposts" afforded Albright no relief. *Id.* at 275, 114 S.Ct. at 814 (citing *Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)). Likewise, the Fourteenth Amendment affords no relief to Clark. As such, Defendants' Motion for Summary Judgment is **GRANTED** with respect to the claims brought against Washington and Cavil, in their individual capacities, pursuant to the Fourteenth Amendment.

■ Unlike his Fourteenth Amendment claim, Clark's Fourth Amendment claim is not barred by the *Albright* decision.[3] In fact, the Supreme Court suggested that Albright's claimed right to be free from malicious prosecution may have warranted judgment under the Fourth Amendment.[4] *See Albright,* 510 U.S. at 274–75, 114 S.Ct. at 813 (noting "the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions"). Thus, *Albright* left undisturbed the Fifth Circuit's "longstanding recognition of a Fourth Amendment right to be free from mali-

cious prosecution." *Kerr,* 171 F.3d at 339 (citing *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1303 (5th Cir.1995)). Therefore, the Court concludes that (1) Clark alleges a constitutional violation; and (2) the law regarding the alleged violation was clearly established at the time of the operative events.

■ This leads the Court to the final question: whether the showings made by the Parties create a genuine issue of material fact as to whether Washington and Cavil actually engaged in conduct that violated the clearly established law. *See Kerr,* 171 F.3d at 339–40 (citing *Rich,* 841 F.2d at 1563). In Texas, the following are elements of a claim for malicious prosecution: (1) criminal action commenced against the plaintiff; (2) the prosecution was caused by the defendants or with their aid; (3) the action terminated in the plaintiff's favor; (4) the plaintiff was innocent; (5) the defendants acted without probable cause; (6) the defendants acted with malice; and (7) the criminal proceeding damaged the plaintiff. See *Kerr,* 171 F.3d at 340 (citing *Hayter v. City of Mount Vernon,* 154 F.3d 269, 275 (5th Cir.1998)). After a careful review of all of the evidence submitted by the Parties, the Court concludes that most of the elements of a malicious prosecution claim are undeniably satisfied. However, at least two elements lack substantiation: the evidence does not establish that the Defendants acted without probable cause or with malice, nor does it establish a genuine, material factual dispute regarding these elements.[5]

---

**3.** The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

**4.** The *Albright* Court declined to rule on the Fourth Amendment issue because it was not raised in Albright's petition for certiorari.

**5.** While both Parties address the issue of probable cause in their briefs to the Court, neither Party discusses the malice issue in depth. Thus, the Court finds it sufficient to state that the record shows absolutely no evidence that Defendants acted with malice.

For purposes of malicious prosecution, probable cause means "the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted." *Brown v. Nationsbank Corp.,* 188 F.3d 579, 586 (5th Cir.1999) (citing *Richey v. Brookshire Grocery Co.,* 952 S.W.2d 515, 518 (Tex.1997)); (*see also Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979)); *Moore v. McDonald,* 30 F.3d 616, 620 n. 2 (5th Cir.1994) (quoting *Pendleton v. Burkhalter,* 432 S.W.2d 724, 727 (Tex. Civ.App—Houston [1st Dist.] 1968, writ ref'd n.r.e.)). Probable cause "does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). Rather, the probable cause analysis only requires the Court to find "a basis for an officer to believe to a 'fair probability' that a violation occurred." *Piazza v. Mayne,* 217 F.3d 239, 246 (5th Cir.2000) (citing *United States v. Antone,* 753 F.2d 1301, 1304 (5th Cir.1985)). To the extent that the facts implicated in the probable cause determination are undisputed, the Court may resolve the issue as a matter of law. *See Kerr,* 171 F.3d at 340 (citing *Blackwell v. Barton,* 34 F.3d 298, 305 (5th Cir.1994)). Thus, in order to defeat Defendants' Motion for Summary Judgment, Clark must demonstrate that the undisputed facts support an ultimate finding that probable cause did not exist at the time Washington and Cavil aided in the commencement of Clark's prosecution.[6]

Washington and Cavil assert that probable cause existed in light of the following evidence: a statement by Castillo's parents implicating Clark; Castillo's phone records (showing over 700 calls from Castillo to Clark, several of which lasted over twenty minutes); letters and a calendar containing messages written by Castillo regarding Clark; statements by Castillo's friends and classmates tending to corroborate Castillo's story; a statement by Castillo herself confirming the alleged sexual relationship; and a search of Clark's home that revealed green Trojan condoms in his night stand (the precise type and location described by Castillo in a statement made to LMISD).

Clark counters with evidence suggesting a lack of probable cause. This evidence includes Castillo's similar allegations of an affair between herself and another male teacher;[7] telephone calls made by Castillo to male LMISD employees other than Clark; statements by Castillo's friends that Castillo had not told them about her alleged relationship with Clark; a statement by Castillo's best friend that she could not determine if Castillo was telling the truth; the fact that Castillo changed her story when interviewed by LMISD personnel; and a medical examination that revealed no indication that Castillo had been the victim of sexual assault, sexual abuse or that she had suffered the effects

---

Further attention to the malice issue is unnecessary in light of the Court's lengthy discussion regarding probable cause.

**6.** A genuine, material factual dispute as to some of the elements of probable cause does not necessarily preclude a finding of probable cause, for probable cause may still be found based upon the totality of the undisputed elements. *See Kerr,* 171 F.3d at 340 n. 13.

**7.** Castillo also claimed to have had a sexual relationship with coach Kelly Hazen. In addition, Castillo previously gave accounts of relationships with her junior high school band director, another LMISD coach, a janitor and several other male LMISD employees.

of any violent behavior. Clark also proposes that probable cause was lacking because Washington and Cavil stood solely "on [Castillo's] statement ostensibly corroborated by the fact that a green package containing two [ ] Trojan condoms was discovered in the bedroom of [Clark]."

Although the Court acknowledges that Clark has indeed proffered evidence that suggests the presence of a factual dispute as to some of the elements of probable cause, the totality of the evidence clearly supports a finding that probable cause existed. It is undisputed that both Castillo and her parents gave statements to LMISD confirming the alleged sexual relationship. It is also undisputed that Castillo's phone records indicated a vast number of phone calls placed by her to Clark's home and that a search of Clark's home revealed condoms of the precise type and in the specific location described by Castillo. Even if the force of this evidence was somewhat weakened by the competing evidence provided by Clark, and even if the prospect of obtaining a conviction was not especially viable, as a matter of law, the Court nevertheless concludes that Defendants have proffered proof of probable cause.[8] *See Brown,* 188 F.3d at 586. Thus, Clark has failed to state a claim for malicious prosecution. Accordingly, Defendants' Motion for Summary Judgment is hereby **GRANTED** with respect to the malicious prosecution claims against Washington and Cavil in their individual capacities.

### State Law Claims

Finally, Clark's state law malicious prosecution claim must fail as well. First, LMISD, as a political subdivision of the state, is immune from liability pursuant to Tex.Civ.Prac. & Rem.Code § 101.051 as well as Texas common law. *See Jones v. Houston Indep. Sch. Dist.,* 805 F.Supp. 476, 479 (S.D.Tex.1991). Secondly, Washington and Cavil cannot be sued in their individual capacities under Texas law due to the doctrine of qualified official immunity. *See* Tex.Educ.Code § 22.051(a) ("A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee ...."); *Barr v. Bernhard,* 562 S.W.2d 844, 849 (Tex.1978); *Hopkins v. Spring Indep. Sch. Dist.,* 736 S.W.2d 617, 619 (Tex.1987).[9] Therefore, Defendants' Motion for Summary Judgment is hereby **GRANTED** with respect to Clark's state law malicious prosecution claims.

### IT IS SO ORDERED

---

**8.** The Fifth Circuit's threshold for a finding is quite low. The decision in *United States v. Wadley,* 59 F.3d 510, 512–13 (5th Cir.1995) exemplifies this notion: In that case, the Fifth Circuit held that probable cause existed to arrest a suspect who merely had fled from police in a high crime area and "reached into his pocket" while doing so.

**9.** In *Barr* and *Hopkins,* the Texas Supreme Court construed former § 21.912(b) of the Texas Education Code, the predecessor to § 22.051(a). Section 21.912(b) was recodified as § 22.051(a) in 1995. The recodification made no substantive changes to the immunity provision.